Michael McShane (CA SBN 127944)
mcshane@audetlaw.com
Jonas P. Mann (CA SBN 263314)
jmann@audetlaw.com
**AUDET & PARTNERS, LLP**
711 Van Ness Ave., Ste. 500
San Francisco, CA 94102
Telephone:  (415) 982-1776

(*Additional Counsel listed on signature page*)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM SCOTT PHILLIPS and SUZANNE SCHMIDT PHILLIPS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT:** <br><br> **(1) CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*);** <br> **(2) CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500, *et seq.*);** <br> **(3) NEGLIGENT MISREPRESENTATION** <br><br> **DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiffs WILLIAM SCOTT PHILLIPS and SUZANNE SCHMIDT PHILLIPS ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendant Apple Inc. ("Apple" or Defendant"). Plaintiffs state and allege as follows upon information and belief, based upon, *inter alia*, investigations conducted by and through their attorneys, except as to those allegations pertaining to Plaintiffs personally, which are alleged upon knowledge. Plaintiffs invoke this Court's jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

**SUMMARY OF THE ACTION**

1.      This matter arises from Defendant's failure to adequately disclose and represent that true nature of the Wi-Fi Assist included in the recently released iOS 9 operating system. Specifically, although Apple ensured that the Wi-Fi Assist application is installed on the phone as automatically activated, Apple failed to full disclose that if Wi-Fi Assist is left activated it will allow the phone to automatically switch to using cellular data.

2.      Defendant failed to disclose to consumers that this automatic switch to cellular data caused by an activated Wi-Fi Assist (the default setting) may result in exceeding the data capacity allowed under their phone plans. This is especially true as there is no warning or disclosure when the phone switches from Wi-Fi to cellular data.

3.      Defendant intentionally chose to have the default setting of the Wi-Fi Assist as activated while at the same time chose to omit the likelihood of data overcharges to consumers that do not have an unlimited data plan.

4.      As one Apple consumer reported:

Amongst its big bag of tricks, iOS 9 has one seemingly innocuous feature: Wi-Fi Assist, enabled by default, which will switch to cellular data when your Wi-Fi sucks. This would be great, if I had an unlimited data plan. I don't, but now I do have a very expensive cellphone bill.

I've been using Wi-Fi Assist on my iPhone for a few months; even despite knowing what to look for (a greyed-out Wi-Fi icon), I haven't really noticed it in action. But it has been showing up in my cell data usage: since downloading the

iOS 9 beta that introduced Wi-Fi assist, I've used around a third more data a
month (4GB vs my regular-as-clockwork 3GB).[1]

5.      Instead, consumers were notified by news articles and blogs that there was a
need to deactivate the Wi-Fi Assist. For instance, on September 29th, 2015, Fortune.com
reported the threat of massive phone bills:

> If Wi-Fi Assist is left activated, your iPhone will automatically use cellular data
> whenever it finds that a Wi-Fi router signal is weak. This results in faster network
> connections for your phone, but it will eat up the data allotted by your cell phone
> plan. If you don't have an unlimited data plan, this could be a big problem when
> your next phone bill arrives. That's right, extra fees.[2]

6.      Similarly, on the same day, the Washington Post carried an article warning
consumers of the Wi-Fi Assist's capability to silently switch a phone to cellular data:

> The setting, called "WiFi Assist," automatically switches your phone over to the
> cellular network when you're in a place with spotty WiFi. The feature is on by
> default in iOS 9, meaning that your iPhones and iPads will seek out cell networks
> unless you tell them not to — and could potentially eat up your data plan without
> you realizing it.[3]

7.      It was not until after the flood of articles, comments and complaints online that
Apple issued a statement on October 2, 2015 on Wi-Fi Assist, including how it works and that
the default setting is activated.

> Because you'll stay connected to the Internet over cellular when you have a poor
> Wi-Fi connection, you might use more cellular data. For most users, this should
> only be a small percentage higher than previous usage. If you have questions
> about your data usage, learn more about managing your cellular data or contact
> Apple Support…

> Wi-Fi Assist is on by default. If you don't want your iOS device to stay connected
> to the Internet when you have a poor Wi-Fi connection, you can disable Wi-Fi
> Assist. Go to Settings > Cellular. Then scroll down and tap Wi-Fi Assist.

---

[1] http://reviews.gizmodo.com/ios-9s-wi-fi-assist-is-eating-my-cell-data-1733513159

[2] http://fortune.com/2015/09/29/wifi-assist-apple-iphone-setting/

[3] https://www.washingtonpost.com/news/the-switch/wp/2015/09/29/apples-wifi-assist-gets-blamed-for-surprise-spikes-in-data-use/

8.    Defendant's above corrective action, however, still downplays the possible data overcharges a user could incur. Reasonable and average consumers use their iPhones for streaming of music, videos and running various applications – all of which can use significant data. Defendant's corrective statement does not disclose any basis for its conclusion that an average consumer would not see much increase in cellular usage.

## JURISDICTION AND VENUE

9.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(11) because there are one hundred or more persons whose individual claims are being brought herein, Plaintiffs are a citizen of a different state than Defendant, and the overall amount in controversy exceeds $5,000,000.00, exclusive of costs, interest, and attorneys' fees. The individual claims can be tried jointly in that they involve common questions of fact and law.

10.    This Court has personal jurisdiction over the Defendant because it conducts substantial and continuous business in California.

11.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b) because part of the events or omissions that give rise to the claims occurred in California and this District and because Defendant conducts a substantial part of its business in this District.

## PARTIES

12.    Plaintiffs are residents of Edgewater, Florida who upgraded two iPhones 5S to the new iOS 9 operating system. Plaintiffs were unaware that this upgrade automatically activated Wi-Fi Assist on their devices, which ultimately resulted in data overuse charges by their cellular service provider.

13.    Defendant Apple Inc. ("Apple") is a corporation organized under the laws of the State of California, and has its principal place of business in Cupertino, Santa Clara County, California.

## PLAINTIFF AND THE CLASS WERE MISLEAD ABOUT CELLULAR DATA USAGE ON THEIR DEVICES

14.    Plaintiffs were unaware that a simple upgrade to their operating system – as recommended by their iPhones – could result in their devices silently switching over to cellular

usage. Defendant chose to not disclose to Plaintiffs and the public that Wi-Fi Assist would likely result in data overuse charges if not disabled.

15.     Instead, Defendant opted to ensure Wi-Fi Assist's default setting was activated. This decision unfairly subjected consumers, such as Plaintiffs, to overuse charges and/or early usage of available data which could lead to incurring new charges to increase data allotment or loss of ability to use device as usual.

16.     Plaintiffs did in fact incur overuse charges on both of their iPhones and were not informed when their device would switch between Wi-Fi and cellular data due to the addition of Wi-Fi Assist on their iPhones.

17.     In the end, Plaintiffs and the Class were not properly informed by Defendant about the existence, nature and purpose of Wi-Fi Assist when they upgraded to iOS 9 and/or purchased a device with iOS 9 already downloaded.

18.     Defendant has attempted to downplay the nondisclosure by claiming any increase data usage would only be by a "small percentage" for most people. But the numerous complaints available online do not support this position:[4]



**Alex Heath** ✔
@alexeheath

Something is wrong. Data usage since upgrading to iOS 9 is off the charts. Snapchat: 20GB. Instagram: 16GB. Facebook: 10GB.

Tweetbot: 47GB.

---
[4] http://www.techinsider.io/apple-wifi-assist-feature-vs-battery-life-2015-10

**J.M. Aguirre**
@jm_aguirre                                                          9h

The new "**WiFi Assist**" feature on iOS 9 just ate through my
data plan. iPhone users, beware. Switching it off is a better
option.

**Steve van Wyk**
@stevevanwyk1                                                        9h

ios9 users: turn of **wifi-assist** at the bottom of cellular data
settings to save data usage! #iOS9

**Ethan Zwerg**
@EmperorZwerg                                                        9h

YOOOO if you have iOS9, turn off **Wifi-Assist** in your cellular
settings. It sucked up my data like a ▬▬▬▬▬▬ I'm talking
62▬▬▬▬▬GGIGS

## CLASS ACTION ALLEGATIONS

19.     Plaintiffs bring this action on their own behalf and on behalf of the following
Classes: (1) an "iOS 9 Purchaser Class" consisting of all persons or entities in the United States
who purchased an iPhone or iPad with a cellular data plan with iOS 9 pre-installed for purposes
other than resale or distribution, and (2) an "iOS 9 Upgrade Class" consisting of all persons or
entities in the United States who upgraded an iPhone or iPad with a cellular data plan to iOS 9.

20.     Plaintiffs also bring this action on their own behalf and on behalf of the
following California Business and Professions Code Subclasses: (1) an "iOS 9 California
Claims Purchaser Class" consisting of all persons or entities who purchased an iPhone or iPad
with a cellular data plan with iOS 9 pre-installed for purposes other than resale or distribution
with respect to California Business & Professions Code 17200 claims, and (2) an "iOS 9
California Claims Upgrade  Class" consisting of all persons or entities in the United States who
upgraded an iPhone or iPad with a cellular data plan to iOS 9 with respect to California
Business & Professions Code 17200 claims.

21.     This action is properly maintainable as a class action under Rule 23 of the
Federal Rules of Civil Procedure.

22.     The Class is so numerous that joinder of all members is impracticable. Upon information and belief, there are thousands of Class members throughout the United States.

23.     There are questions of law and fact which are common to the Class. The common questions, which are each separate issues that should be certified for classwide resolution pursuant to Fed. R. Civ. P. 23(c)(4), include but are not limited to:

a.     The nature, scope and operations of the wrongful practices of Apple;

b.     Whether Defendant owed a duty of care to the Class;

c.     Whether Defendant's advertising, marketing, product packaging, and other promotional materials were untrue, misleading, or reasonably likely to deceive;

d.     Whether Defendant knew that its representations and/or omissions regarding the Wi-Fi Assist were false or misleading, but continued to make them;

e.     Whether allowing the default setting for Wi-Fi Assist to be activated was an unfair and deceptive business act;

f.     Whether California law applies to the proposed Class;

g.     Whether, by the misconduct as set forth in this Complaint, Apple engaged in unfair or unlawful business practices, pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

h.      Whether Defendant's conduct violated the Cal. Bus. & Prof. Code § 17500, *et seq.;*

i.     Whether Defendant was unjustly enriched; and

j.      Whether Plaintiffs and the Class members are entitled to actual, statutory, and punitive damages.

24.     Plaintiffs' claims are typical of the claims of the other Class members and Plaintiffs do not have any interests adverse to the Class. Specifically, Plaintiffs and all the Class members sustained damages arising out of Defendant's wrongful course of conduct. The harms suffered by Plaintiffs are typical harms suffered by the Class members, and Plaintiffs and other

Class members have an interest in preventing Defendant from engaging in such conduct in the future.

25.     Plaintiffs are adequate representatives of the Class, have retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the party opposing the Class.

27.     Plaintiffs anticipate that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.     In addition, certification of specific issues such as Defendant's liability is appropriate.

## COUNT I

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

29.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

30.     Plaintiffs bring this claim on behalf of themselves and the proposed Class.

31.     The UCL prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

32.     The UCL imposes strict liability. Plaintiffs do not have to prove Defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business acts or practices. Instead, Plaintiffs only have to prove such acts or practices occurred.

33.     Defendant engaged in unlawful business acts and practices in violation of the UCL by engaging in unfair, unlawful and fraudulent business acts or practices as described herein, including but not limited to, failing to disclose that Wi-Fi Assist's default setting could end up in significant data overuse charges.

34.     Defendant's practices are likely to deceive, and have deceived, members of the public.

35.     Defendant knew, or should have known, that its misrepresentations, omissions, failure to disclosure and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

36.     Defendant continued to make such misrepresentations despite the fact it knew or should have known that its conduct was misleading and deceptive.

37.     By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of the UCL.

38.     Plaintiffs reserve the right to identify additional provisions of law violated by Defendant as further investigation and discovery warrants.

39.     Defendant's misrepresentations, business practices and its false and misleading advertising regarding Wi-Fi Assist constitute "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.

40.     Defendant's misrepresentations, business practices and its false and misleading advertising regarding Wi-Fi Assist constitute "fraudulent" business acts and practices because members of the consuming public, including Plaintiffs and the Class members, were and are likely to be deceived thereby.

41.     The harm to Plaintiffs and members of the public outweighs the utility, if any, of Defendant's acts and practices described above and therefore Defendant's acts and practices constitute an unfair business act or practice.

42.     Defendant's acts and practices have detrimentally impacted competition and caused substantial harm to Plaintiffs, the Class members, and the consuming public. Plaintiffs and the Class members were misled and suffered injuries and lost money or property as a direct and proximate result of Defendant's unlawful business acts and practices.

43.     Defendant knew or reasonably should have known its misleading business practices of ensuring the Wi-Fi Assist was activated and failing to provide real-time notice that the phone switched to cellular data was likely to deceive reasonable consumers. Likewise,

Defendant knew or reasonably should have known its misrepresentations and omissions regarding Wi-Fi Assist's capabilities and functions were and are likely to deceive reasonable consumers.

44.     Defendant's misrepresentations and its false and misleading business practices present a continuing threat to consumers in that such advertising will continue to mislead consumers.

45.     By reason of the foregoing, Defendant should be required to pay damages and/or make restitution to Plaintiffs and the Class Members and pay for Plaintiffs' and the Class members' attorneys' fees.

### COUNT II

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

46.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

47.     Plaintiffs bring this claim on behalf of themselves and the proposed Class.

48.     Defendant Apple Inc. is a California company disseminating advertising from its California headquarters throughout the United States.

49.     The FAL provides that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

50.     When Defendant disseminated the advertising, it knew, or by the exercise of reasonable care should have known, that the statements concerning Wi-Fi Assist capacity were untrue or misleading, or omitted to state the truth about the WiFi Assist impact on data usage, in violation of the FAL. Specifically, Defendant failed to disclose that the default setting for  Wi-Fi Assist was "activated" and that Wi-Fi Assist provides no notice when it switches to cellular

data. Likewise, Defendant knew or reasonably should have known its misrepresentations and omissions regarding Wi-Fi Assist's capabilities and functions were and are likely to deceive reasonable consumers.

51.     Plaintiffs and the Class members were misled and suffered injuries and lost money or property as a direct and proximate result of Defendant's misrepresentations and its false and misleading advertising regarding Wi-Fi Assist in violation of the FAL.

52.     As a result of Defendant's wrongful conduct, Plaintiffs and the Class are entitled to restitution and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

53.     Pursuant to Cal. Bus. & Prof. Code §§ 17203 & 17535, Plaintiffs and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ the above-described practices as they pertain to the promotion of Wi-Fi Assist and iOS 9.

54.     Likewise, Plaintiffs seek an order requiring Defendant to make full corrective disclosures to correct its prior misrepresentations, omissions, failures to disclose, and partial disclosures.

55.     On information and belief, Defendant has failed and refused, and in the future will fail and refuse, to cease its deceptive advertising practices, and will continue to do those acts unless this Court orders Defendant to cease and desist pursuant to Cal. Bus. & Prof. Code § 17535. The corrective statement by Apple did not fully address all misrepresentations.

56.     Plaintiffs, individually and on behalf of the Class, seek restitution, disgorgement, injunctive relief, and all other relief allowable under the FAL.

## COUNT III

## NEGLIGENT MISREPRESENTATION

57.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

58.     Plaintiffs bring this claim on behalf of themselves and the proposed Class.

59.     Defendant had a duty to disclose to Plaintiffs and the Class members that the default setting for Wi-Fi Assist was "activated" and that Wi-Fi Assist provides no notice when it

switches to cellular data. Likewise, Defendant had a duty to disclose the true nature of Wi-Fi Assist's capabilities and functions.

60.     Defendant negligently and/or carelessly misrepresented, omitted and concealed from consumers material facts relating to Wi-Fi Assist's capabilities and functions.

61.     These misrepresentations and omissions were material and concerned the specific characteristics and Wi-Fi Assist that a reasonable consumer would consider in choosing to allow the application to run on their device.

62.     As a result of Defendant's misstatements and omissions, it was under a duty to disclose the additional facts necessary to avoid any misrepresentation or confusion. Further, Defendant knew of its misrepresentations and omissions because Defendant designed and controlled how Wi-Fi Assist would be uploaded on a device- including that the default setting would be "activated."

63.     At the time Defendant failed to disclose, concealed, suppressed and/or omitted material information, Defendant knew, or by the exercise of reasonable care should have known, that the statements were false and misleading to reasonable consumers.

64.     Plaintiffs and Class members justifiably relied upon Defendant's misrepresentations and omissions about the Wi-Fi Assist. Plaintiffs and Class members were unaware of the falsity of Defendant's misrepresentations and omissions and, as a result, justifiably relied on them in allowing Wi-Fi Assist to run as activated on their devices.  Had Plaintiffs and Class members been aware of the true nature and quality of Wi-Fi Assist, they would not have deactivated it to avoid data overuse charges.

65.     As a direct and proximate result of Defendant's misrepresentations and omissions of material fact, Plaintiffs and Class members have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment with respect to their Complaint as follows:

1.     Certifying the Class as defined herein;

2.     Award damages, including compensatory, exemplary, and statutory damages to

Plaintiffs and all members of the Class;

    3.    Award Plaintiffs and the Class actual damages sustained;

    4.    Award injunctive and declaratory relief, as claimed herein;

    5.    Award Plaintiffs and the Class punitive damages;

    6.    Award Plaintiffs and the Class their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

    7.    Award such other and further relief as this Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  October 23, 2015        AUDET & PARTNERS, LLP

        /s/ Michael McShane
        Michael McShane
        Jonas P. Mann
        711 Van Ness Avenue, Suite 500
        San Francisco, CA 94112
        Telephone:  (415) 982-1776
        mcshane@audetlaw.com
        jmann@audetlaw.com

        Robert K. Shelquist
        Rebecca A. Peterson
        LOCKRIDGE GRINDAL NAUEN P.L.L.P.
        100 Washington Avenue South, Suite 2200
        Minneapolis, MN  55401
        Telephone: (612) 339-6900
        Facsimile: (612) 339-0981
        rkshelquist@locklaw.com
        rapeterson@locklaw.com

        Charles J. LaDuca
        CUNEO GILBERT & LADUCA, LLP
        8120 Woodmont Avenue, Suite 810
        Bethesda, MD 20814
        Telephone:  (202) 789-3960
        Facsimile:  (202) 789-1813
        charlesl@cuneolaw.com

D. Aaron Rihn
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street, Suite 2500
Pittsburgh, PA  15219
Telephone:  (866) 273-1941
arihn@peircelaw.com

William H. Anderson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone:  (202) 789-3960
wanderson@cuneolaw.com

Joseph Bellissimo, Jr.
BELLISSIMO & PEIRCE
324 Sims Avenue
Ellwood City, PA 16117
Telephone: (724) 758-1645
jsblaw@prodigy.net

*Attorneys for Plaintiffs*