UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM SCOTT PHILLIPS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 15-CV-04879-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 42 |

Plaintiffs William Scott Phillips ("William Phillips"), Suzanne Schmidt Phillips ("Susanne Phillips"), and William Cottrell ("Cottrell") (collectively, "Plaintiffs") bring this putative class action against Defendant Apple Inc. ("Apple") for alleged deceptive representations about the "Wi-Fi Assist" feature of the iPhone, iPod, and iPad. ECF No. 39 (Consolidated Amended Class Complaint, or "CACC").[1] Before the Court is Apple's motion to dismiss. ECF No. 42. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and thus VACATES the motion hearing set for April 21, 2016, at 1:30 p.m. The case management conference scheduled for the same date and time is CONTINUED to July 27, 2016.

---

[1] Unless otherwise indicated, all ECF references are from the docket of No. 15-05205 in the Northern District of California.

1
Case No. 15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Apple's motion to dismiss with leave to amend.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are owners of Apple iPhones who upgraded to the iOS 9 operating system ("iOS 9").[2]  CACC ¶¶ 18–19.  iOS 9, introduced in mid-September 2015, includes a feature called Wi-Fi Assist.  *Id.* ¶ 10.  This feature is enabled by default once a user installs iOS 9, although consumers may disable Wi-Fi Assist through the iPhone's settings.  *Id.* ¶ 27–28, 31.  Wi-Fi Assist keeps consumers connected to the Internet even when the wireless local area network ("Wi-Fi") connection is poor.  *Id.* ¶ 10.  To do so, Wi-Fi Assist automatically switches consumers to a cellular connection when the cellular connection is stronger than the Wi-Fi connection.  *Id.*

While Wi-Fi Assist boosts Internet speeds, use of a cellular connection requires use of cellular data.  Plaintiffs allege that Wi-Fi Assist "uses more cellular data than users expect."  *Id.* ¶ 3.  Moreover, because many consumers' cell phone plans include only a limited amount of data (not unlimited data), Plaintiffs allege that the "automatic switch to cellular data caused by an activated Wi-Fi Assist may result in exceeding the data capacity allowed under [consumers'] phone plans."  *Id.*  In fact, Plaintiffs each incurred data overuse charges after downloading iOS 9 and Wi-Fi Assist.  *Id.* ¶ 23.

Apple allegedly received "numerous complaints" from consumers about increased data usage due to Wi-Fi Assist.  *Id.* ¶ 26.  For example, Plaintiffs point to four consumer complaints on Twitter regarding increased data usage.  *Id.* ¶ 25.  Plaintiffs also highlight news articles published on September 29, 2015 by Fortune, Gizmodo, and the Washington Post that explain how Wi-Fi Assist can increase use of cellular data and thus impose extra costs on consumers with limited data plans.  *Id.* ¶¶ 5–7, 12.  On October 2, 2015, in response to the "flood of articles, comments and complaints online," Apple issued a statement on its website respecting Wi-Fi Assist:

---

[2] William and Suzanne Phillips each own an iPhone 5S.  CACC ¶ 18.  It is not clear what type of iPhone is owned by Cottrell.  *See id.* ¶ 19.

2
Case No. 15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

> Because you'll stay connected to the Internet over cellular when you have a poor Wi-Fi connection, you might use more cellular data. For most users, this should only be a small percentage higher than previous usage. If you have questions about your usage, learn more about managing your cellular data or contact Apple Support . . .
>
> Wi-Fi Assist is on by default. If you don't want your iOS device to stay connected to the Internet when you have a poor Wi-Fi connection, you can disable Wi-Fi Assist. Go to Settings > Cellular. Then scroll down and tap Wi-Fi Assist.

*Id.* ¶¶ 8–9 (footnote omitted).

Plaintiffs were unaware that the upgrade to iOS 9 automatically activated Wi-Fi Assist on their iPhones. *Id.* ¶¶ 18–19. According to Plaintiffs, Apple failed "to adequately disclose and represent the true nature of the Wi-Fi Assist" when Wi-Fi Assist was released in September 2015. *Id.* ¶ 2. Specifically, Plaintiffs say, Apple failed to disclose (1) that Wi-Fi Assist is automatically activated when iOS 9 is downloaded; (2) "that if Wi-Fi Assist is left activated it will allow the phone to automatically switch to cellular data," without warning; and (3) Wi-Fi Assist "would likely result in data overuse charges if not disabled." *Id.* ¶¶ 2–4, 21. Had Plaintiffs been aware of the true nature and quality of Wi-Fi Assist, Plaintiffs say that they would have disabled Wi-Fi Assist to avoid data overuse charges. *Id.* ¶ 82.

Plaintiffs further assert that Apple's October 2, 2015 statement is "not an effective means of addressing the problems caused by its implementation of Wi-Fi Assist." *Id.* ¶ 9. First, Apple's statement allegedly "downplays the possible data overcharges a user could incur." *Id.* Second, the "menu option for turning off Apple's Wi-Fi Assist is buried deep in a submenu" after listings for third-party apps. *Id.* ¶ 27. Accordingly, some users must scroll through multiple pages to find and disable Wi-Fi Assist. *Id.* ¶¶ 27–30. Plaintiffs claim that Apple's representations and omissions "prevent[] users from making an informed choice about the use of Wi-Fi Assist." *Id.* ¶ 31.

**B. Procedural History**

The instant action originated with two separate complaints, each alleging that Apple violated California state laws by failing to disclose information about Wi-Fi Assist. William and Suzanne Phillips filed a complaint on October 23, 2015. ECF No. 1. Cottrell filed a complaint on November 13, 2015. No. 15-05205, ECF No. 1. On December 1, 2015, the Court found that the

3

Case No. 15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

two cases were related, ECF No. 29, and on January 18, 2016, the Court consolidated the two cases pursuant to a stipulation of the parties, ECF No. 37.

On February 8, 2016, Plaintiffs filed the CACC. ECF No. 39. As in the original complaints, Plaintiffs assert three claims: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (3) negligent misrepresentation. *Id.* ¶¶ 47–83. Plaintiffs seek damages and an injunction "barring Apple from ever setting Wi-Fi Assist as activated without a consumer's permission and prohibiting Apple from modifying, altering or choosing the Wi-Fi Assist setting on any device." *Id.* ¶ 2, pg. 8.

Plaintiffs seek to represent two national classes: "(1) an 'iOS 9 Purchaser Class' consisting of all persons or entities in the United States who purchased an iPhone, iPod or iPad with iOS 9 pre-installed for purposes other than resale or distribution, and (2) an 'iOS 9 Upgrade Class' consisting of all persons or entities in the United States who upgraded an iPhone, [i]Pod or iPad or iOS 9." *Id.* ¶ 37. Plaintiffs estimate that the two national classes, combined, include over 76 million consumers. *Id.* ¶ 14. Plaintiffs also seek to represent two subclasses with respect to Plaintiffs' UCL claims: "(1) an 'iOS 9 California Claims Purchaser Class' consisting of all persons or entities who purchased an iPhone, iPod or iPad with iOS 9 pre-installed for purposes other than resale or distribution . . . , and (2) an 'iOS 9 California Claims Upgrade Class' consisting of all persons or entities in the United States who upgraded to an iPhone, [i]Pod or iPad to iOS 9." *Id.* ¶ 38.

Apple filed the instant motion to dismiss on March 9, 2016. ECF No. 42 ("Mot."). Plaintiffs opposed the motion on March 30, 2016. ECF No. 45 ("Opp."). Apple replied on April 8, 2016. ECF No. 46. On April 19, 2016, Apple filed a statement of recent decision pointing this Court to the dismissal of a case that alleged Apple made misrepresentations and omissions about certain features of the iPhone 5, *Palmer v. Apple Inc.*, 15-CV-05808-RMW (N.D. Cal. Apr. 15, 2016). ECF No. 49.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. While lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.*

Once a defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff carries that burden by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011).

**B. Rule 12(b)(6) Motion to Dismiss**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**C. Rule 9(b)**

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular

misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011). However, "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

**D. Leave to Amend**

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipsis in original). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III. DISCUSSION**

Apple moves to dismiss Plaintiffs' complaint on four grounds: (1) Plaintiffs do not have Article III or statutory standing; (2) Plaintiffs' claims for violation of the fraudulent prong of the UCL, violation of the FAL, and negligent misrepresentation do not satisfy Rule 9(b)'s heightened pleading standard; (3) Plaintiffs have not stated a claim; and (4) Plaintiffs may not seek damages or restitution under the UCL or the FAL. Because the Court concludes below that Plaintiffs have

7
Case No. 15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

not adequately alleged standing, the Court need not address Apple's other arguments for dismissal.

## A. Standing

### 1. Legal Standards

#### a. Article III Standing

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Not only must at least one named plaintiff satisfy constitutional standing requirements, but the plaintiff "bears the burden of showing that he [or she] has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Article III standing to sue requires that "(1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates*, 511 F.3d at 985 (quoting *Lujan*, 504 U.S. at 560–61).

To establish standing for prospective injunctive relief, a plaintiff must demonstrate that "[s]he has suffered or is threatened with a concrete and particularized legal harm coupled with 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Id.* (citation and internal quotation marks omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); s*ee also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive relief . . . [a plaintiff] must demonstrate a real and immediate threat of repeated injury in the future."). A plaintiff must establish a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Finally, a named plaintiff must show that she herself is subject to a likelihood of future injury. Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999).

### b. Statutory Standing under the UCL and the FAL

To establish standing under the UCL or FAL, a plaintiff must demonstrate that she "suffered injury in fact and [] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also id.* § 17535 (imposing similar standing requirement for FAL actions). In interpreting state law, federal courts "are bound by the pronouncements of the state's highest court." *Sram Corp. v. Shimano, Inc.*, 25 F. App'x 626, 628 (9th Cir. 2002). The California Supreme Court has held that, where the unfair competition or false advertising underlying a plaintiff's claim consists of a defendant's misrepresentation or omission, the UCL and the FAL require a plaintiff to establish actual reliance on the alleged misrepresentation or omission to establish statutory standing. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 314, 326 (2009) (concluding that actual reliance is required for statutory standing under the UCL); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 & n.9 (2011) (applying *Tobacco II* and requiring actual reliance for statutory standing under the FAL); *see also Kane v. Chobani, Inc.*, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) (analyzing *Tobacco II*, *Kwikset*, and California Court of Appeals decisions and concluding that actual reliance is required for claims based on a defendant's misrepresentations that arise under the UCL's fraudulent, unlawful, and unfair prongs).

To establish actual reliance, the plaintiff must allege that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (internal quotation marks omitted). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (internal quotation marks omitted). In other words, a plaintiff may show actual reliance by alleging that "had the omitted information been disclosed one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal 4th 1082, 1093 (1993); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (finding that plaintiffs had sufficient evidence of reliance to survive summary judgment when plaintiffs offered "a plausible method of disclosure and . . . that they would have been aware of information

9
Case No. 15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

disclosed using that method"). While a plaintiff need not demonstrate that the defendant's misrepresentations were "the sole or even the predominant or decisive factor influencing his conduct," the misrepresentations must have "played a substantial part" in the plaintiff's decisionmaking. *Tobacco II*, 46 Cal. 4th at 326. Further, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id.* at 327.

### 2. Analysis

Apple does not dispute that the data overuse charges incurred by Plaintiffs are the type of injury sufficient for injury in fact. *See Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 (9th Cir. 2007) ("[P]ecuniary injury is a sufficient basis for standing."). However, Apple asserts that there is no causal link between Plaintiffs' injury and Apple's conduct because Plaintiffs have failed to allege actual reliance upon any misrepresentations or omissions by Apple. Mot. at 6–7.[3] Additionally, Apple contends that Plaintiffs lack standing to seek injunctive relief because "Plaintiffs are now aware of Wi-Fi Assist and have the ability to turn it off" and thus "there is no danger that [Plaintiffs] will be misled in the future." *Id.* at 8.

Because Apple raises facial challenges to Plaintiffs' standing, the Court "[a]ccept[s] the [Plaintiffs'] allegations as true and draw[s] all reasonable inferences in the [Plaintiffs'] favor." *Leite*, 749 F.3d at 1121. The Court examines Apple's two standing challenges in turn.

### a. Actual Reliance

#### i. Actual Reliance Required for Article III and Statutory Standing

As discussed above, to establish Article III and statutory standing Plaintiffs must show an injury in fact that is causally linked to Apple's alleged misrepresentations and omissions. *See Bates*, 511 F.3d at 985 (noting injury must be "fairly traceable" to the challenged action of the

---

[3] Apple also discusses reliance when arguing that Plaintiffs' claims do not satisfy Rule 9(b)'s heightened pleading requirement. *See* Mot. at 10–11 ("Reliance is an essential element of each of Plaintiffs' causes of action . . . ."). Although reliance is an element of a negligent representation claim, the California Supreme Court addresses reliance in the context of UCL and FAL claims as a requirement of statutory standing. *See, e.g.*, *Kwikset Corp.*, 51 Cal. 4th at 326 (noting that, for standing, plaintiffs must plead economic injury arising from reliance on the defendant's misrepresentations); *Tobacco II*, 46 Cal. 4th at 328 ("Accordingly, we conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement . . . .").

defendant); Cal. Bus. & Prof. Code § 17204 (standing under the UCL requires Plaintiffs' injury to occur "as a result of" defendant's misconduct); *id.* § 17535 (same requirement for standing under the FAL). For purposes of statutory standing under the UCL and the FAL, a showing of causation requires a showing that Plaintiffs actually relied on Apple's alleged misrepresentations or omissions. In addition, courts have held that actual reliance is required to demonstrate causation for purposes of Article III standing when the plaintiffs assert that their injury is the result of deceptive misrepresentations or omissions. *See, e.g.*, *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) (actual reliance required for Article III standing for UCL and Consumers Legal Remedies Act ("CLRA") claims); *Kane*, 2013 WL 5289253, at *5–6 (actual reliance required for Article III standing for UCL, FAL, and CLRA claims); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013) (actual reliance required for Article III standing for UCL, FAL, and negligent misrepresentation claims); *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *10 (N.D. Cal. Sept. 1, 2010) (actual reliance required for Article III standing for UCL claims).

Here, the theory underlying Plaintiffs' UCL, FAL, and negligent misrepresentation claims is that Plaintiffs incurred data overuse charges as a result of Apple's representations and omissions concerning Wi-Fi Assist. Specifically, Plaintiffs allege that Apple failed to disclose that (1) Wi-Fi Assist is activated by default when a consumer downloads iOS 9; (2) Wi-Fi Assist switches devices to use of cellular data, and does so without warning; and (3) use of Wi-Fi Assist may result in data overuse charges. CACC ¶¶ 2–3, 21–22. In opposition to the instant motion, Plaintiffs clarify that they are asserting that Apple made some partial representations but did not disclose the above facts, "which materially qualify the facts disclosed, or which render [Apple's] disclosure likely to mislead." Opp. at 8–10. Because of these alleged partial representations and omissions, Plaintiffs assert that they incurred data overuse charges from excessive data use after Wi-Fi Assist was activated on Plaintiffs' iPhones. CACC ¶¶ 18–19, 23.

Because Plaintiffs' theory of causation rests on Apple's alleged representations and omissions, Apple asserts that Plaintiffs must plead actual reliance in order to plead Article III

11
Case No. 15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

standing, as well as statutory standing under the UCL and the FAL. In opposition to the instant motion, Plaintiffs do not argue—or even address—reliance. However, Plaintiffs seem to dispute that reliance is required to establish Article III standing by asserting that Plaintiffs' data overuse charges are "fairly traceable" to Apple's conduct because "the harm stems directly from the Defendant's conduct (turning on Wi-Fi Assist by default and without warning)." Opp. at 21 (citation omitted).

Plaintiffs do not explain how Plaintiffs' data overuse charges could be "fairly traceable" to Apple's *representations or omissions* if Plaintiffs did not rely upon those representations or omissions in choosing to install iOS 9 or use Wi-Fi Assist. Rather, for Plaintiffs' data overuse charges to be caused by Apple's representations, Plaintiffs must have seen the representations and taken action based on what they saw—in other words, Plaintiffs must have actually relied on the misrepresentations or omissions to have been harmed by them. *See In re iPhone Application Litig.*, 6 F. Supp. 3d at 1015 (finding actual reliance was required to show that plaintiff's injury was fairly traceable to the defendant's misrepresentation). Accordingly, the Court finds that Plaintiff must plead actual reliance in order to establish Article III standing for Plaintiff's UCL, FAL, and negligent misrepresentation claims, in addition to establishing statutory standing under the UCL and the FAL. *See Pirozzi*, 966 F. Supp. 2d at 919 (concluding that actual reliance was required to establish Article III standing for UCL, FAL, and negligent misrepresentation claims); *Kwikset*, 51 Cal. 4th at 326–27 & n.9 (actual reliance required for statutory standing under the UCL and the FAL).

### ii. Allegations in the CACC

Having found that actual reliance is a requirement of Article III and statutory standing in the instant case, the Court turns to the allegations in the CACC to determine whether Plaintiffs allege actual reliance. A careful reading of the CACC reveals that Plaintiffs do not allege that they saw or heard any statements, advertising, terms of use, or other representations by Apple before

downloading iOS 9 or using Wi-Fi Assist.[4]  *See generally* CACC.  The CACC specifically describes only one affirmative representation by Apple: the October 2, 2015 statement allegedly posted to Apple's website, which states, in part: "Because you'll stay connected to the Internet over cellular when you have a poor Wi-Fi connection, you might use more cellular data.  For most users, this should only be a small percentage higher than previous usage." *Id.* ¶ 8–9.  However, Plaintiffs do not assert that they read or relied on this statement when choosing to download iOS 9 or use Wi-Fi Assist.  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2010) (finding no reliance when plaintiffs described defendant's privacy policy but did not allege that they were aware of the policy, read it, or relied upon it); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015) ("A partial-representation claim requires [p]laintiffs to plead reliance on at least some misleading partial representations.").  Moreover, Plaintiffs do not allege the date when they downloaded iOS 9 or disabled Wi-Fi Assist.  Thus, the Court cannot determine whether Plaintiffs could have seen Apple's statement before being injured.  In fact, Plaintiffs allege that Apple consumers are *unlikely* to have viewed Apple's statement until after downloading iOS 9, using Wi-Fi Assist, and incurring data overuse charges.  CACC ¶ 26.  If Plaintiffs did not view Apple's statement until after suffering injury, then viewing the statement could not have been the "immediate cause" of the injury.  *See Tobacco II*, 46 Cal. 4th at 326.

In addition, while the CACC alleges that Apple "disseminat[es] advertising," CACC ¶ 66, the CACC does not identify the existence of any advertising or advertising campaign related to iOS 9 or Wi-Fi Assist.  Nor do Plaintiffs allege when they read or heard such advertising, or offer

---

[4] In opposition to the instant motion, Plaintiffs assert that Apple "marketed, advertised, and represented Wi-Fi Assist in connection with the new iOS 9 system as an improvement for all consumers" and "Apple made specific representations that adding a new application would provide better cellular performance yet failed to disclose the material fact that it would also increase the user's data charges automatically." Opp. at 11.  The opposition does not provide any examples of marketing, advertising, or representations nor explain when, where, or how any representations occurred.  Nor do Plaintiffs say that they read, saw, or relied upon any marketing, advertising, or representations.  Regardless, Plaintiffs cannot avoid dismissal by alleging new facts in an opposition to a motion to dismiss.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

any other "plausible method" by which Plaintiffs would have become aware of Apple's alleged partial representations or omissions. *See Daniel*, 806 F.3d at 1225, 1227 (discussing "various ways in which a plaintiff can demonstrate that she would have been aware of [the allegedly omitted fact], had disclosure been made"). As a result, the CACC fails to plead how, if any allegedly omitted information had been disclosed, Plaintiffs "would have been aware of it and behaved differently." *See Mirkin*, 5 Cal 4th at 1093.

Plaintiffs do allege, with respect to Plaintiffs' negligent misrepresentation claim, that "Plaintiffs and Class members justifiably relied on Defendant's misrepresentations and omissions about Wi-Fi Assist. . . . Had Plaintiffs and Class members been aware of the true nature and quality of Wi-Fi Assist, they would have deactivated it to avoid data overuse charges." CACC ¶ 82. This conclusory allegation—not even asserted with respect to Plaintiffs' UCL and FAL claims—has no factual support in the CACC. Given that Plaintiffs have failed to plead that they viewed or heard any representations or omissions by Apple or that Plaintiffs would have been aware of any omitted information had it been disclosed, the Court concludes that Plaintiffs have failed to plead actual reliance. *See Mirkin*, 5 Cal 4th at 1093; *Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911, at *6 (N.D. Cal. Dec. 23, 2015) (finding no actual reliance when plaintiffs did not see or hear any representations of the defendant before suffering economic injury); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) (finding no actual reliance when "[p]laintiff does not allege that, before he bought his MINI, he reviewed any brochure, website, or promotional material that might have contained a disclosure of the cracking defect").

Because Plaintiffs have not adequately alleged actual reliance upon any partial representations or omissions by Apple, Plaintiffs have failed to allege Article III standing for Plaintiffs' UCL, FAL, and negligent misrepresentation claims, as well as statutory standing for Plaintiffs' UCL and FAL claims. Accordingly, the Court GRANTS Apple's motion to dismiss. The Court does so with leave to amend because the Court concludes that amendment would not necessarily be futile. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

other facts" (internal quotation marks omitted)).

### b. Injunctive Relief

In light of Plaintiffs' failure to allege facts sufficient to support Article III, UCL, or FAL standing, the Court need not address Apple's other arguments. However, in the event that Plaintiffs choose to file an amended complaint, the Court addresses Apple's additional argument on standing. Apple contends that Plaintiffs lack standing to seek injunctive relief because "Plaintiffs are now aware of Wi-Fi Assist and have the ability to turn it off" and thus "there is no danger that [Plaintiffs] will be misled in the future." Mot. at 8. Plaintiffs counter that the "risk of future harm is not hypothetical here" because Apple regularly issues iOS updates and "could easily issue an update that surreptitiously turns Wi-Fi Assist back on by default." Opp. at 21. Accordingly, Plaintiffs argue that "[t]he only means of securing the default position of Wi-Fi Assist as being off is through the injunctive relief Plaintiffs seek in this litigation." *Id.*

There are two deficiencies in Plaintiffs' assertions of future harm. First, although the CACC alleges that Apple has released updates to iOS 9, *see* CACC ¶ 32, the CACC does not allege that Plaintiffs have downloaded any of these updates; that these updates download automatically without action from Plaintiffs; or that Plaintiffs intend to download such updates in the future. The Court also notes that Plaintiffs do not allege that they intend to purchase another iPhone or other Apple device with iOS 9. Accordingly, Plaintiffs have not alleged any "likelihood that [they] will again be wronged in a similar way." *Bates*, 511 F.3d at 985. Second, the CACC does not allege that Apple has the ability or intent to use an iOS 9 update to turn on Wi-Fi Assist. Plaintiffs, however, must establish a "*real and immediate* threat of repeated injury." *Id.* (emphasis added). Injury can not be "conjectural or hypothetical." *Id.* Here, the CACC provides no allegations about Apple's intentions or the contents of past iOS 9 updates, let alone allegations of a real and immediate threat. Consequently, the Court finds that Plaintiffs have not sufficiently alleged a risk of future harm and thus do not have standing to seek injunctive relief.

In opposition to the instant motion, Plaintiffs argue that Plaintiffs may possess standing even if "there is not sufficient threat of future harm." Opp. at 21. Plaintiffs point to *Ries v.*

15

*Arizona Beverages USA LLC*, 287 F.R.D. 523, 533–34 (N.D. Cal. 2012), in which the district court stated: "[W]ere the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result." The district court held that the plaintiffs had standing to seek to enjoin the defendants from making deceptive representations about the contents of AriZona beverages even though the plaintiffs were now aware of the products' contents. The district court noted that the harm from deceptive advertising continues even after a consumer is aware of the deception, as the advertising is not "any more truthful" after discovery. *Id.* at 533. However, the plaintiffs in *Ries* alleged that they intended to purchase AriZona beverages in the future despite knowing about the deceptive representations. *Id.* By contrast, as noted above, Plaintiffs here do not allege that they intend to download any iOS 9 updates nor that any such updates will download automatically. Accordingly, without any allegation of a likelihood of future harm, *Ries* supports the Court's conclusion that Plaintiffs in the instant case have not alleged standing to seek injunctive relief.

      The Court acknowledges that a number of district courts within this circuit have gone further than *Ries* and held that a plaintiff has standing to seek injunctive relief regarding allegedly misleading advertising even if the plaintiff does not claim that the plaintiff is still interested in buying the defendant's product. *See , e.g.*, *Dean v. Colgate-Palmolive Co.*, 2015 WL 3999313, at *8–9 (C.D. Cal. June 17, 2015); *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7–8 (C.D. Cal. Apr. 11, 2011). However, this Court and other courts within this circuit have previously held—relying partly on *Ries*—that plaintiffs who were induced into purchasing a product through deceptive advertising must allege intent to purchase the deceptively-advertised product in the future in order to have standing to seek injunctive relief. *See Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *9 (N.D. Cal. May 23, 2014) (holding that plaintiff did not have standing to seek injunctive relief when plaintiff did not allege that plaintiff intended or desired to purchase the allegedly misbranded product in the future); *see also, e.g.*, *Makaeff v. Trump Univ., LLC*, 2015 WL 7302728, at *7–8 (S.D. Cal. Nov. 18, 2015) (same); *Mason v. Nature's

1  *Innovation, Inc.*, 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013) (same). This Court explained

2  that "[p]lacing this requirement on Plaintiffs does not thwart the objective of California consumer

3  protection laws since it is not impossible that a consumer would be interested in purchasing the

4  products at issue if they were labeled correctly." *Werdebaugh*, 2014 WL 2191901, at *9 (quoting

5  *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *4 (N.D. Cal. Dec. 10, 2013)). Plaintiffs

6  offer no argument in opposition to the Court's previous reasoning, and no argument as to why the

7  Court should instead follow *Dean* or *Henderson*. Accordingly, Plaintiffs here must allege a

8  sufficient likelihood of future harm in order to seek injunctive relief.

9  Because Plaintiffs have not alleged that Plaintiffs intend to download iOS 9 updates, nor

10 offered any other reason for the Court to find a likelihood of future harm, the Court concludes that

11 Plaintiffs lack standing to seek injunctive relief. Accordingly, the Court GRANTS Apple's

12 motion to dismiss Plaintiffs' claims to the extent that the claims seek injunctive relief. The Court

13 does so with leave to amend because the Court concludes that amendment would not necessarily

14 be futile. *See Lopez*, 203 F.3d at 1127.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Apple's motion to dismiss with leave to amend. Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within thirty (30) days of the date of this order. Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiffs' claims. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: April 19, 2016

_____
LUCY H. KOH
United States District Judge

17
Case No. 15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND