United States District Court
Northern District of California

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   WILLIAM SCOTT PHILLIPS, et al.,          Case No.15-CV-04879-LHK

13                      Plaintiffs,           **ORDER GRANTING DEFENDANT'S**
                                              **MOTION TO DISMISS WITH**
14            v.                              **PREJUDICE IN PART AND WITHOUT**
                                              **PREJUDICE IN PART**
15   APPLE INC.,
                                              Re: Dkt. No. 53
16                      Defendant.

17

18          Plaintiffs William Scott Phillips ("William Phillips"), Suzanne Schmidt Phillips ("Suzanne

19   Phillips"), and William Cottrell ("Cottrell") (collectively, "Plaintiffs") bring this putative class

20   action against Defendant Apple Inc. ("Apple") for alleged deceptive representations about the

21   "Wi-Fi Assist" feature of the iPhone, iPod, and iPad. ECF No. 51 (Second Consolidated Amended

22   Class Complaint, or "SCACC").[1] Before the Court is Apple's motion to dismiss the Second

23   Amended Consolidated Class Action Complaint. ECF No. 53 ("Mot."). Having considered the

24   submissions of the parties, the relevant law, and the record in this case, the Court GRANTS

25

26   ─────────────────────
     [1] Unless otherwise indicated, all ECF references are from the docket of No. 15-04879 in the
27   Northern District of California.

                                                  1
28   Case No.15-CV-04879-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT
     PREJUDICE IN PART

Apple's motion to dismiss with prejudice in part and without prejudice in part.

## I.      BACKGROUND

### A.   Factual Background

Plaintiffs William Phillips and Suzanne Phillips are owners of Apple iPhones, and Plaintiff Cottrell is the owner of a fourth generation Apple iPad. Plaintiffs upgraded their devices to the iOS 9 operating system ("iOS 9") in the month after iOS 9 was introduced on September 16, 2015. SCACC ¶¶ 11–14. The iOS 9 system includes a feature called Wi-Fi Assist. This feature is enabled by default once a user installs iOS 9, although consumers may disable Wi-Fi Assist through the device's settings. *Id.* ¶¶ 4, 65. Wi-Fi Assist provides consumers with a stable internet connection even when the wireless local area network ("Wi-Fi") connection is poor. *Id.* ¶ 4. To do so, Wi-Fi Assist automatically switches consumers to a cellular connection when the cellular connection is stronger than the Wi-Fi connection. *Id.*

Although Wi-Fi Assist boosts Internet speeds, use of a cellular connection requires use of cellular data. Plaintiffs allege that Wi-Fi Assist "results in unexpected consumption of cellular data by users who are both unaware of the existence of Wi-Fi Assist and unaware that, by default, Wi-Fi Assist is turned on." *Id.* ¶ 25. Moreover, because many consumers' cell phone plans include only a limited amount of data (not unlimited data), Plaintiffs allege that the "automatic switch to cellular data caused by an activated Wi-Fi Assist may result in exceeding the data capacity allowed under [consumers'] phone plans." *Id.* In fact, Plaintiffs each incurred data overuse charges after downloading iOS 9 and Wi-Fi Assist. *Id.* ¶¶ 11, 14.

After the release of iOS 9, Apple allegedly received "numerous complaints" from consumers about increased data usage due to Wi-Fi Assist. *Id.* ¶ 64. For example, Plaintiffs point to several consumer complaints on Twitter regarding increased data usage. *Id.* ¶ 33–34. Plaintiffs also highlight news articles published on September 29, 2015 by the International Business Times, Fortune, and the Washington Post that explain how Wi-Fi Assist can increase use of cellular data and thus impose extra costs on consumers with limited data plans. *Id.* ¶¶ 28–30. On October 2,

Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART

2015, in response to the "flood of articles, comments and complaints online and potential liability exposure," Apple issued a statement on its website respecting Wi-Fi Assist:

> Because you'll stay connected to the Internet over cellular when you have a poor Wi-Fi connection, you might use more cellular data. For most users, this should only be a small percentage higher than previous usage. If you have questions about your usage, learn more about managing your cellular data or contact Apple Support . . .

> Wi-Fi Assist is on by default. If you don't want your iOS device to stay connected to the Internet when you have a poor Wi-Fi connection, you can disable Wi-Fi Assist. Go to Settings > Cellular. Then scroll down and tap Wi-Fi Assist.

*Id.* ¶ 31 (footnote omitted).

Plaintiffs were unaware that the upgrade to iOS 9 automatically activated Wi-Fi Assist on their devices. *Id.* ¶¶ 11, 13. Before downloading iOS 9, "all users are presented with a 'Software Update' screen that provides an overview of iOS 9 and its features." *Id.* ¶ 35. After users click through the Software Update, they are presented with a multi-step setup process for installing iOS 9. During this process, the user's device requests the user's permission to activate various features of iOS 9, including location tracking services and a password saving application. *Id.* ¶ 41–42. Plaintiffs allege that this process "provided ample opportunity for Apple to disclose to users that Wi-Fi Assist was enabled, or, alternatively, had Apple chosen to leave Wi-Fi Assist off by default, to notify users that they could enable it." *Id.* ¶ 49. However, when Wi-Fi Assist was released in September 2015, Plaintiffs allege that Apple "elected not to meaningfully and adequately warn users about the existence, function or automatic implementation of Wi-Fi Assist" during the setup process for iOS 9 or through any other means. *Id.* ¶ 6. Had Plaintiffs been aware of the true nature and quality of Wi-Fi Assist, Plaintiffs say that they would have disabled Wi-Fi Assist to avoid data overuse charges. *Id.* ¶ 118.

**B. Procedural History**

The instant action originated with two separate complaints, each alleging that Apple violated California state laws by failing to disclose information about Wi-Fi Assist. William and Suzanne Phillips filed a complaint on October 23, 2015. ECF No. 1. Cottrell filed a complaint on

Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART

United States District Court
Northern District of California

United States District Court
Northern District of California

1  November 13, 2015. No. 15-05205, ECF No. 1. On December 1, 2015, the Court found that the

2  two cases were related, ECF No. 29, and on January 18, 2016, the Court consolidated the two

3  cases pursuant to a stipulation of the parties, ECF No. 37.

4        On February 8, 2016, Plaintiffs filed the Consolidated Amended Class Complaint

5  ("CACC"). ECF No. 39. The CACC asserted three claims: (1) violation of California's Unfair

6  Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) violation of California's

7  False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (3) negligent

8  misrepresentation. CACC ¶¶ 47–83.

9        On March 9, 2016, Defendant filed a motion to dismiss the CACC, which the Court

10  granted, with leave to amend, on April 19, 2016. ECF Nos. 42, 50. In dismissing the CACC, the

11  Court found that Plaintiffs had not adequately alleged standing. ECF No. 50, at 7–8. Specifically,

12  the Court determined that the UCL, the FAL, and Article III of the U.S. Constitution require

13  Plaintiffs to allege "actual reliance." *Id.* at 10–12. Plaintiffs failed to allege actual reliance because

14  they "d[id] not allege that they saw or heard any statements, advertising, terms of use, or other

15  representations by Apple before downloading iOS 9 or using Wi-Fi Assist" or allege when they

16  downloaded iOS 9 or disabled Wi-Fi Assist. *Id.* at 12–13. The Court also found that Plaintiffs did

17  not have standing to seek injunctive relief because they had not established any "likelihood that

18  [they would] again be wronged in a similar way." *Id.* at 4 (quoting *Bates v. United Parcel Serv.,*

19  *Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).

20        On May 19, 2016, Plaintiffs filed a Second Consolidated Amended Class Complaint

21  ("SCACC"). ECF No. 51. As in the original complaints and the CACC, the SCACC asserts claims

22  under the UCL, the FAL, and negligent misrepresentation. SCACC ¶¶ 83–119. Plaintiffs seek

23  damages, restitution, disgorgement, and an injunction "barring Apple from ever setting Wi-Fi

24  Assist as activated without a consumer's permission and prohibiting Apple from modifying,

25  altering or choosing the Wi-Fi Assist setting on any device." *Id.* ¶¶ 32, 78.

26        Plaintiffs seek to represent two national classes: "(1) an 'iOS 9 Purchaser Class' consisting

27

28  Case No.15-CV-04879-LHK
   ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT
   PREJUDICE IN PART

4

of all persons or entities in the United States who purchased an iPhone, iPod or iPad with iOS 9 pre-installed for purposes other than resale or distribution, and (2) an 'iOS 9 Upgrade Class' consisting of all persons or entities in the United States who upgraded an iPhone, iPod or iPad to iOS 9." *Id.* ¶ 74. Plaintiffs estimate that the two national classes, combined, may exceed 100 million consumers. *Id.* ¶ 77. Plaintiffs also seek to represent two subclasses with respect to Plaintiffs' UCL claims: "(1) an 'iOS 9 California Claims Purchaser Class' consisting of all persons or entities who purchased an iPhone, iPod or iPad with iOS 9 pre-installed for purposes other than resale or distribution . . . , and (2) an 'iOS 9 California Claims Upgrade Class' consisting of all persons or entities in the United States who upgraded an iPhone, iPod or iPad to iOS 9." *Id.* ¶ 75.

Apple filed the instant motion to dismiss on July 6, 2016. ECF No. 53 ("Mot."). As part of its motion, Apple requested judicial notice of two documents: the contents of a link entitled "Learn More," which accompanied the Software Update screen presented to users before downloading iOS 9 ("Learn More link"), and the "iPhone iOS 9 User Guide" ("User Guide"). *Id.* at 3–5. In support of this request, on July 6, 2016, Apple filed a declaration by Vivek Bhardwaj, an employee of Apple who works in iOS product marketing. ECF No. 54. Plaintiffs opposed the motion to dismiss on August 19, 2016. ECF No. 57 ("Opp."). The same day, Plaintiffs also filed a motion to strike the Bhardwaj Declaration and all discussion of the Learn More link and the User Guide in Apple's motion to dismiss. ECF No. 58. On September 2, 2016, Apple replied to Plaintiffs' opposition to the motion to dismiss and filed a response to Plaintiffs' motion to strike. ECF Nos. 59–60. Plaintiffs filed a reply to Apple's response to the motion to strike on September 9, 2016. ECF No. 62.

## II.     LEGAL STANDARD

### A.  Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. While lack of statutory standing requires

5

dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.*

Once a defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff carries that burden by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011).

### B.  Rule 12(b)(6) Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint

Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART

United States District Court
Northern District of California

that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### C. Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727,

United States District Court
Northern District of California

7

731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011). However, "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." FED. R. CIV. P. 9(b).

### D. Leave to Amend

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipsis in original). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.   REQUEST FOR JUDICIAL NOTICE AND MOTION TO STRIKE

As part of its motion, Apple asks the Court to take judicial notice of the contents of a link entitled "Learn More," which accompanied the "Software Update" screen presented to users before downloading iOS 9 ("Learn More link"), and the "iPhone iOS 9 User Guide" ("User Guide"), a document available on Apple's public website. Mot. at 3–5. In response to this request, Plaintiffs filed a "Motion to Strike Defendant['s] Factual or Evidentiary Submissions in Support of Defendant[']s Motion to Dismiss," asking the Court to strike all references to the Learn More link

Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART

and the User Guide in Apple's motion to dismiss, as well as the declaration accompanying the motion. ECF No. 58. However, pursuant to Civil Local Rule 7-3(a), "[a]ny evidentiary and procedural objections to [a] motion must be contained within the brief or memorandum" accompanying the opposition to that motion. Plaintiffs violated this rule by filing a motion to strike rather than confining their objections to their opposition to Apple's motion to dismiss. Therefore, the Court STRIKES Plaintiffs' Motion to Strike. *See Elliot v. Spherion Pac. Work, LLC*, 368 F. App'x 761, 763 (9th Cir. 2010) (affirming the district court's refusal to consider evidentiary objections submitted in violation of the court's local rules).

Nevertheless, the Court finds that dismissal is appropriate without considering the Learn More link and the User Guide. Therefore, the Court need not decide whether it can take judicial notice of these documents or whether the documents were incorporated by reference in the SCACC. The Court therefore DENIES Apple's request for judicial notice as moot.

## IV.   DISCUSSION

Apple moves to dismiss the SCACC on the same four grounds that it asserted in its first motion to dismiss: (1) Plaintiffs do not have Article III or statutory standing; (2) Plaintiffs may not seek monetary remedies other than restitution under the UCL or the FAL; (3) Plaintiffs have not stated a claim under the UCL, the FAL, or the tort of negligent misrepresentation; and (4) Plaintiffs' claims for violation of the fraudulent prong of the UCL, violation of the FAL, and negligent misrepresentation do not satisfy Rule 9(b)'s heightened pleading standard.

The Court first considers standing. The Court then discusses whether Plaintiffs' claimed remedies under the UCL and FAL are available under those laws. The Court need not reach the merits of the UCL and FAL claims because the Court dismisses them on other grounds. Finally, the Court considers the merits of Plaintiffs' negligent misrepresentation claim.

### A.  Standing

#### 1.  Legal Standards

##### a.  Article III Standing

9

United States District Court
Northern District of California

1     "In a class action, standing is satisfied if at least one named plaintiff meets the

2     requirements." *Bates*, 511 F.3d at 985. Not only must at least one named plaintiff satisfy

3     constitutional standing requirements, but the plaintiff "bears the burden of showing that he [or she]

4     has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493

5     (2009). Article III standing to sue requires that "(1) the plaintiff suffered an injury in fact, i.e., one

6     that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or

7     hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is

8     'likely' to be 'redressed by a favorable decision.'" *Bates*, 511 F.3d at 985 (quoting *Lujan*, 504

9     U.S. at 560–61). In order to establish Article III standing in a claim for a misleading omission, a

10    plaintiff must plead "actual reliance," which requires allegations that Plaintiffs actually relied on

11    the omissions and were harmed by them. *See In re iPhone Application Litig.*, 6 F. Supp. 3d 1004,

12    1015 (N.D. Cal. 2013).

13           To establish standing for prospective injunctive relief, a plaintiff must demonstrate that

14    "[s]he has suffered or is threatened with a concrete and particularized legal harm coupled with 'a

15    sufficient likelihood that [s]he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985

16    (citation and internal quotation marks omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95,

17    111 (1983)). A plaintiff must establish a "real and immediate threat of repeated injury." *Id.*; *see*

18    *also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o

19    establish standing to pursue injunctive relief . . . [a plaintiff] must demonstrate a real and

20    immediate threat of repeated injury in the future."). "Past exposure to illegal conduct does not in

21    itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any

22    continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Finally, a

23    named plaintiff must show that she herself is subject to a likelihood of future injury. Allegations

24    that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient

25    to establish standing to seek injunctive relief on behalf of the class. *Hodgers-Durgin v. de la Vina*,

26    199 F.3d 1037, 1044–45 (9th Cir. 1999).

27

28
Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT
PREJUDICE IN PART

United States District Court
Northern District of California

1

####  b.  Statutory Standing under the UCL and the FAL

2       To establish standing under the UCL and the FAL, a plaintiff must establish actual reliance

3  on the alleged misrepresentation or omission. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 314,

4  326 (2009) (concluding that actual reliance is required for statutory standing under the UCL);

5  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 & n.9 (2011) (applying *Tobacco II* and

6  requiring actual reliance for statutory standing under the FAL); *see also Kane v. Chobani, Inc.*,

7  2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) (analyzing *Tobacco II*, *Kwikset*, and

8  California Court of Appeals decisions and concluding that actual reliance is required for claims

9  based on a defendant's misrepresentations that arise under the UCL's fraudulent, unlawful, and

10  unfair prongs).

11       To establish actual reliance, the plaintiff must allege that "the defendant's

12  misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing

13  conduct." *Tobacco II*, 46 Cal. 4th at 326 (internal quotation marks omitted). While a plaintiff need

14  not demonstrate that the defendant's misrepresentations were "the sole or even the predominant or

15  decisive factor influencing his conduct," the misrepresentations must have "played a substantial

16  part" in the plaintiff's decisionmaking. *Id.* Further, "a presumption, or at least an inference, of

17  reliance arises wherever there is a showing that a misrepresentation was material." *Id.* at 327.

18       **2.  Apple's Factual Attack on Jurisdiction Based on Plaintiffs' Lack of Actual
           Reliance and Thus Lack of Article III Standing**

19

20       Apple raises two arguments about standing. First, Apple claims that Plaintiffs have not

21  alleged actual reliance and therefore lack both constitutional standing under Article III and

22  statutory standing under the UCL and the FAL. Second, Apple claims that because Plaintiffs have

23  not alleged a threat of future harm, they do not have standing to seek injunctive relief. The Court

24  addresses these arguments in turn.

25       In granting Apple's motion to dismiss the CACC, the Court found that Plaintiffs had failed

26  to allege actual reliance as required by the UCL, the FAL, and Article III. ECF No. 50, at 13–14.

27  Although Plaintiffs claimed that Apple improperly failed to disclose that Wi-Fi Assist was enabled

28

Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT
PREJUDICE IN PART

by default and may cause users to incur additional data charges, Plaintiffs "d[id] not allege that they saw or heard any statements, advertising, terms of use, or other representations by Apple before downloading iOS 9 or using Wi-Fi Assist" or allege when they downloaded iOS 9 or disabled Wi-Fi Assist. *Id.* at 12–13.

In the SCACC, Plaintiffs have added new allegations that provide more specific information about the representations upon which they relied when downloading and using iOS 9. Plaintiffs allege that Plaintiff Cottrell "updated his iPad to iOS 9 shortly after its release on September 16, 2015." SCACC ¶ 13. At that time, Cottrell "reviewed the representations made by Apple on the 'Software Update' screen" and was "unaware of the inclusion of Wi-Fi Assist in iOS 9 . . . [or] that, by default, Wi-Fi Assist was activated in iOS 9." *Id.* The complaint alleges that Cottrell learned of the existence of Wi-Fi Assist after noticing that he had exceeded his data cap for the billing cycle ending on October 23, 2015. *Id.* ¶ 14. Cottrell then turned off Wi-Fi Assist. *Id.*

Similarly, the complaint alleges that Plaintiffs William Phillips and Suzanne Phillips learned of and subsequently disabled Wi-Fi Assist after they reviewed their billing statement for the month ending September 26, 2015 and found that they had exceeded their data cap. *Id.* ¶ 11. Like Cottrell, William and Suzanne Phillips were exposed to the representations in question because, according to Plaintiffs, "[p]rior to installing iOS 9, *all users* are presented with a 'Software Update' screen that provides an overview of iOS 9 and its features." *Id.* ¶ 35 (emphasis). The complaint also describes a setup process, which all users must complete, that promps users to actively enable certain features, such as location tracking. *Id.* ¶ 39–46. Plaintiffs claim that Apple can and should have included a disclosure about Wi-Fi Assist somewhere in this setup process.

The SCACC alleges that in these representations, Apple made misleading omissions. In short, Plaintiffs have specifically identified the representations on which they relied in the month following the September 16, 2015 release of iOS 9. *See id.* ¶¶ 11, 13–14 (identifying the billing cycles after which Plaintiffs first noticed excessive data charges). By alleging that they promptly

United States District Court
Northern District of California

12

turned off Wi-Fi Assist, Plaintiffs have also adequately demonstrated that "had the omitted information been disclosed, [they] would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). This is enough to allege that the "misrepresentation or nondisclosure was an immediate cause" of the plaintiff's injury, because "[a] plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (internal quotation marks omitted). Plaintiffs have sufficiently alleged actual reliance and therefore have shown that they have both Article III and statutory standing.

Apple counters that two documents, the Learn More Link and the iPhone User Guide, demonstrate that Apple did not omit any necessary information and therefore Plaintiffs could not have relied upon those alleged omissions. Although the complaint does not contain or describe the contents of these documents, Apple claims that the Court can consider them because "[i]n resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039. However, statutory standing under the UCL and the FAL is not jurisdictional, and a dismissal on those grounds "is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction." *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). Therefore, to the extent that the Learn More link and the User Guide are submitted as part of a factual attack on jurisdiction, the Court may consider them only for how they bear on Article III standing.

Apple claims that the Learn More link and the User Guide demonstrate that Plaintiffs do not have Article III standing because these documents show that Plaintiffs' injuries are not "fairly

Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART

traceable" to Apple's actions. Mot. at 1. In Apple's view, these documents disclosed all necessary information about Wi-Fi Assist and therefore, "as a matter of law, Mr. Cottrell could not have reasonably relied upon the alleged misrepresentations or omissions in the Software Update screen." ECF No. 60, at 8.

However, even if Apple is correct, these arguments are not relevant to whether they have alleged facts that establish Article III standing. Instead, they are relevant to whether Plaintiffs have stated a plausible claim for relief. It is true that if a "jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits," then a court may "dismiss for lack of jurisdiction . . . if the material facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987). However, that principle does not mean that a plaintiff lacks standing under Article III's causation prong simply because facts outside of the complaint show that defendant committed no legal wrong.

On the contrary, courts have consistently held that the Article III standard for showing that an injury is "fairly traceable" to the defendant is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). It is certainly "less rigorous" than the standard at later stages of litigation. *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008). In fact, the case that Apple cites in support of its argument, *Noll v. eBay Inc.*, 2013 WL 2384250 (N.D. Cal. May 30, 2013), was decided on nonjurisdictional grounds. The Court in that case dismissed the action under Federal Rule of Civil Procedure 9(b) for failure to allege fraud with particularity rather than under Rule 12(b)(1) for lack of subject matter jurisdiction. *Id.* at *5. Plaintiffs' allegations in this case – that they relied on Apple's representations and omissions and thereby incurred higher cell phone bills – are more than enough to meet their modest burden under Article III. Therefore, the Court finds that the Learn More link and the User Guide do not mount a successful factual attack on jurisdiction. The Court therefore DENIES Apple's motion to dismiss based on a factual attack on jurisdiction based on Plaintiffs' lack of actual reliance and thus lack of Article III standing.

Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3.   Apple's Challenge to Plaintiff's Standing to Seek Injunctive Relief Based on Failure to Allege Future Injury

Next, Apple challenges Plaintiffs' standing to seek injunctive relief under the UCL, FAL, or negligent misrepresentation. In ruling on Apple's first motion to dismiss, the Court noted that although Plaintiffs sought an injunction forbidding Apple from enabling Wi-Fi Assist in future updates to iOS 9, the CACC failed to allege "that Plaintiffs have downloaded any of these [iOS 9] updates; that these updates download automatically without action from Plaintiffs; or that Plaintiffs intend to download such updates in the future." ECF No. 50, at 15. The Court therefore found that Plaintiffs had not established Article III standing to seek injunctive relief because they had not alleged any "likelihood that [they] will again be wronged in a similar way" and therefore had failed to establish a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985. The Court warned that if Plaintiffs did not cure these deficiencies in their SCACC, Plaintiffs would face dismissal of these claims for injunctive relief with prejudice. ECF No. 50 at 17. Apple argues that despite this warning, the SCACC suffers from the same deficiencies.

In the SCACC, Plaintiffs have made no new allegations that they intend to download future updates to iOS 9 or that those updates download automatically without action by Plaintiffs. Instead, Plaintiffs allege that in general, "iOS users rapidly upgrade their iOS devices to new iterations of the iOS operating system." SCACC ¶ 56. They also allege that Apple presses iOS users to download new updates by claiming that the updates are necessary to address security threats, access desirable new features, and ensure compatibility with new devices. *Id.* ¶ 59–61. However, the SCACC's general allegations about how many users adopt iOS 9 updates do not demonstrate that Plaintiffs themselves will download any future updates and thereby "again be wronged in a similar way." *Bates*, 511 F.3d at 985. Indeed, these general trends make Plaintiffs' silence about their own intentions all the more striking. The complaint gives the Court no reason to believe that Plaintiffs are subject to a "real and immediate threat of repeated injury." *Id.* Plaintiffs therefore have not demonstrated standing to pursue their claims for injunctive relief.

In their opposition to the instant motion, Plaintiffs claim that they "will have no choice but

15

United States District Court
Northern District of California

1    to upgrade their iOS to stave off a variety of security risks and maintain the compatibility and

2    usability of their phones." Opp. at 10. Plaintiffs also assert in their opposition that Apple's

3    persistent notifications make it difficult for users to avoid updating iOS 9 for long. However,

4    Plaintiffs have not made these allegations in their complaint, and therefore the Court cannot

5    consider them. *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir.

6    1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the

7    complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's

8    motion to dismiss.") (emphasis in original).

9          Plaintiffs also argue that even if they have not shown real threat of future injury, they may

10   still have standing to seek an injunction on the grounds that they can be harmed by deceptive

11   omissions even after being aware of those omissions. Opp. at 9–10 (citing *Ries v. Arizona*

12   *Beverages USA LLC*, 287 F.R.D. 523, 533–34 (N.D. Cal. 2012)). The Court has already

13   considered and rejected this argument. ECF No. 50, at 16–17. The Court therefore GRANTS

14   Apple's motion to dismiss Plaintiffs' claims for injunctive relief.

15         In the last order dismissing Plaintiff's complaint with leave to amend, the Court held that

16   Plaintiff's allegations were insufficient to grant standing for injunctive relief because Plaintiffs

17   "d[id] not allege that they intend to download any iOS 9 updates nor that any such updates will

18   download automatically." ECF No. 50, at 16. The Court further stated that "failure to cure the

19   deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiffs' claims."

20   *Id.* at 17. Despite this explicit warning, Plaintiffs failed to make the necessary allegations in the

21   SCACC. Granting leave to amend after an explicit warning that failure to cure identified

22   deficiencies would result in dismissal with prejudice would cause "undue delay" and "undue

23   prejudice to the opposing party." *See Leadsinger*, 512 F.3d at 532. The Court therefore dismisses

24   Plaintiffs' claims for injunctive relief with prejudice.

25   **B.  Monetary Remedies under the UCL and the FAL**

26         Apple argues that the monetary remedies that Plaintiffs seek under the UCL and the FAL

27

28                                                                16

are not available under those laws. Specifically, Apple claims that the only monetary remedy available under the UCL and the FAL is restitution, and that Plaintiffs' requested remedies are not restitutionary.

### 1. Legal Standard

In interpreting state law, federal courts "are bound by the pronouncements of the state's highest court." *Sram Corp. v. Shimano, Inc.*, 25 F. App'x 626, 628 (9th Cir. 2002). The California Supreme Court has held that in enacting the UCL, "the Legislature did not intend to authorize courts to order monetary remedies other than restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148; *see also Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1016 (2005) ("[T]he nonrestitutionary remedy that plaintiff seeks is not available under the UCL, regardless of whether the claim is prosecuted as a class action."). Later cases have extended this limitation to the FAL as well. *See Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 695 (2006), *as modified on denial of reh'g* (Jan. 31, 2006). "Under the UCL [and the FAL], an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Korea Supply*, 29 Cal. 4th at 1148. However, a plaintiff can only recover such profits if "defendants took [the money] directly from [the] plaintiff or . . . [the] plaintiff has a vested interest" in the money. *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015) (internal quotation marks omitted).

### 2. Analysis

The SCACC states that Plaintiffs seek "damages and/or restitution" under the UCL and "restitution, disgorgement, . . . and all other relief allowable under the FAL." SCACC ¶ 99, 110. Plaintiffs do not dispute that damages and disgorgement are unavailable under the UCL and the FAL, and they do not specify the restitution that they seek. However, the only monetary harm Plaintiffs allege is the amount that they overpaid on their cell phone bills because of Wi-Fi Assist, and so the Court concludes that this is the money that Plaintiffs seek in restitution.

17

1    The money that Plaintiffs paid for their cellular service was given not to Apple, but to

2    Plaintiffs' wireless carriers. Under *Korea Supply*, the general rule is that money given to someone

3    other than the defendant cannot be recovered in restitution. 29 Cal. 4th at 1148. Furthermore,

4    Plaintiffs do not allege that the amount of their overcharges, or any portion of that amount, was

5    given indirectly Apple. The closest that the SCACC comes to such an allegation is the statement,

6    meant to demonstrate Apple's "smart engagement with wireless carriers," that "Apple was the first

7    cellular phone manufacturer to negotiate a revenue sharing agreement with a wireless carrier, by

8    which Apple received a cut of the monthly fees charged to iPhone users who used AT&T wireless

9    service." SCACC ¶ 21. However, Plaintiffs do not allege that they used AT&T as their wireless

10   carrier or that any revenue sharing agreement was in effect at the time that Plaintiffs allegedly

11   overpaid for cellular service. *See In re First All. Mortgage Co.*, 471 F.3d 977, 997 n.7 (9th Cir.

12   2006) ("As the [Plaintiffs] did not actually claim an ownership interest in funds in "Defendant's]

13   possession, nor explain the basis of their purported ownership interest in those funds, their

14   equitable claim under the UCL is left largely to the court's speculation.").

15   Plaintiffs cite several cases to show that in exceptional circumstances, restitution is

16   available even when the defendant did not directly receive any funds. For example, in *People ex*

17   *rel. Harris v. Sarpas*, 225 Cal. App. 4th 1539, 1558 (2014), the defendant used a fraudulent

18   scheme to funnel money to a corporation that he owned. Similarly, in *Troyk v. Farmers Group,*

19   *Inc.*, 171 Cal. App. 4th 1305, 1338 (2009), the plaintiffs had paid the defendant through a billing

20   company. These cases, and others that Plaintiffs cite, simply reflect the principle that in some

21   circumstances, the relationship between the defendant and the money in question is so close that

22   under "equitable principles of restitution," even though the defendant received the money through

23   a third party, the UCL and the FAL allow recovery. *Hirsch v. Bank of America*, 107 Cal. App. 4th

24   708, 421–22 (2003).

25   The circumstances of this case do not fall under this exception, and the Court need not

26   decide exactly how directly a defendant must receive money in order for a plaintiff to obtain

27

28   Case No.15-CV-04879-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT
     PREJUDICE IN PART

United States District Court
Northern District of California

18

restitution. As noted previously, Plaintiffs have not alleged that Apple received any of the funds at issue. *See Chamberlan v. Ford Motor Co.*, 2003 WL 25751413, at *9 (N.D. Cal. Aug. 6, 2003) (disallowing recovery because Plaintiffs "ha[d] not alleged that they paid any money to Defendant"). Plaintiffs do not specify the source or the amount of the money that they seek, and they do not allege any connection between the money they spent and money in Apple's possession. *See In re First All. Mortgage Co.*, 471 F.3d at 997 ("In order to draw the necessary connection between the [Plaintiffs'] ownership interest and these funds, however, the court would have to assume that all of the money that flowed to [Defendant] pursuant to its relationship with [a third party] was taken directly from the [Plaintiffs] and should not have been."). Thus, the Court has no basis "to infer that the defendant indirectly received that money from the third party." *Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *8 (N.D. Cal. Oct. 5, 2010). The Court therefore dismisses Plaintiffs' UCL and FAL claims.

However, Plaintiffs may still allege a sufficiently traceable connection between the money they paid and the money Apple received in order to support a claim for restitution. The Court therefore grants leave to amend on this issue because amendment would not necessarily be futile. *See Lopez*, 203 F.3d at 1127 (holding that granting leave to amend is appropriate when a plaintiff may be able to plead additional facts stating a plausible claim).

### C. Negligent Misrepresentation

The Court's dismissal of Plaintiffs' UCL and FAL claims leaves negligent misrepresentation as the sole remaining claim. Apple argues that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).

#### 1. Legal Standard

The elements of the tort of negligent misrepresentation in California are "(1) a misrepresentation of material fact; (2) without reasonable grounds for believing it to be true; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *12 (N.D. Cal. June 5, 2009). Negligent

19

misrepresentation claims sound in fraud, and they are therefore subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id.* A "misrepresentation" must be a "positive assertion" or a "false statement." *Huber, Hunt & Nichols, Inc. v. Moore*, 67 Cal. App. 3d 278, 304 (Ct. App. 1977). Failure to disclose information, as well as "statements amounting to mere puffery," do not meet this standard. *Stearns*, 2009 WL 1635931, *12; *see also Huber, Hunt & Nichols*, 67 Cal. App. at 304.

### 2.   Analysis

The SCACC does not allege that Apple made any positively false assertions. Instead, the SCACC claims only that Apple "failed to adequately disclose the existence and nature of Wi-Fi Assist" and that Apple's "partial disclosures" on the Software Update screen "misled" consumers about Wi-Fi Assist. SCACC at 7, ¶ 37. These allegations show at most that Apple omitted material information. Under California precedents, omissions are not actionable under negligent misrepresentation. *See Byrum v. Brand*, 219 Cal. App. 3d 926, 941 (1990) ("[S]omething more than an omission is required to give rise to recovery [under negligent misrepresentation], even as against a fiduciary."); *see also Huber, Hunt & Nichols*, 67 Cal. App. 3d at 304 ("No case has been cited and we find none in which any court held that the doctrine of negligent misrepresentation applies to implied representations. In all cases a 'positive assertion' was involved."). In California, "the Legislature . . . has made the cause of action for negligent misrepresentation a form of deceit," *Gagne v. Bertran*, 43 Cal. 2d 481, 487 n.4 (1954), which requires an "assertion, as a fact, of that which is not true." Cal. Civ. Code § 1710; see also *Gagne*, 43 Cal. 2d at 487–88 (adopting this standard for the tort of negligent misrepresentation). Similarly, some California courts have stated that negligent misrepresentation is governed by the statutory definition of "actual fraud," which requires a "positive assertion . . . of that which is not true" Cal. Civ. Code § 1572; *see Huber, Hunt & Nichols*, 67 Cal. App. 3d at 304; *Byrum*, 219 Cal. App. 3d at 940.

Apple's alleged omissions fall far short of this standard. Plaintiffs do not claim that Apple ever made any positively untrue statement. The closest the SCACC comes to such a claim is the

20

United States District Court
Northern District of California

allegation that the Software Update screen "tout[ed] the increased battery life of iOS 9," even though Wi-Fi Assist may actually increase battery usage. SCACC ¶ 36. However, this is unrelated to the injury that Plaintiffs allege, and even the SCACC describes this alleged misrepresentation as a "fail[ure] to disclose." *Id.* Plaintiffs therefore have not stated a claim for negligent misrepresentation, and the Court therefore grants the motion to dismiss the SCACC's negligent misrepresentation claim under Rule 12(b)(6). The Court dismisses the negligent misrepresentation claim with prejudice, because the claim fails as a matter of law and thus amendment would be futile. *See Leadsinger*, 512 F.3d at 532.

**V.   CONCLUSION**

For the foregoing reasons, the Court STRIKES Plaintiffs' Motion to Strike and GRANTS Apple's motion to dismiss with prejudice in part and without prejudice in part.

**IT IS SO ORDERED.**

Dated: October 6, 2016

_____
LUCY H. KOH
United States District Judge

Case No.15-CV-04879-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART